IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TIMOTHY O'DELL,

                    Petitioner,

v.                          //    CIVIL ACTION NO. 1:14CV73
                                        (Judge Keeley)

MARVIN PLUMLEY,

                    Respondent.

ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4], AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE

        The pro se petitioner, Timothy O'Dell ("O'Dell"), filed a

Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254

("Petition") on April 21, 2014 (Dkt. No. 1).  O'Dell, who is

incarcerated at Huttonsville Correctional Facility in Huttonsville,

West Virginia, challenges his first-degree murder and conspiracy to

commit murder convictions on multiple grounds.  On April 21, 2014,

O'Dell filed a motion for a stay and abeyance (Dkt. No. 4).  On May

9, 2014, O'Dell filed a motion seeking leave to amend both his

petition and his motion for a stay and abeyance (Dkt. No. 9).  On

September 23, 2014, the respondent, Marvin Plumley ("Plumley"),

filed a response to O'Dell's motion for a stay and abeyance (Dkt.

No. 15).[1]

---

        [1] Plumley does not oppose O'Dell's motion for a stay, however,
granting such a stay would not change the outcome because O'Dell's
petition was untimely.

ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE

Magistrate Judge James Seibert issued his Report and Recommendation ("R&R") on November 18, 2014, in which he recommended that the Court deny as moot O'Dell's motions to stay and to amend, and dismiss the petition (Dkt. No. 18). For the following reasons, the Court **ADOPTS** the R&R, **DENIES AS MOOT** O'Dell's motions for a stay and motion to amend, and **DISMISSES** the Petition **WITH PREJUDICE**.

## I.   BACKGROUND

### A. Factual Background

On August 24, 2005, Berkeley County Sheriff's Deputy Cpl. Steve Vigh found Debbie Bivens ("Bivens") shot dead in her home (Dkt. No. 1-1 at 3). Bivens' home was locked, but her bedroom window was broken from the outside. Id. at 3-4. The police found a .380 caliber handgun next to Bivens' bed, and a .40 caliber shell casing next to her body. Id. at 4.

When Berkeley resident Ramsey Turner ("Turner") saw an article in the local newspaper about Bivens' death, he contacted the police. Id. Turner, an acquaintance of O'Dell, asked investigators if Bivens was shot with a .40 caliber weapon, and informed them that O'Dell was showing off a similar weapon with

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

hollow point bullets several days before Bivens' death.  Id.
Turner testified that O'Dell showed him the weapon after asking him
if he would like to make $ 10,000 for picking O'Dell up at a
certain location in the middle of the night and driving him home.
Id.  Turner declined to do so.  Id.

On August 25, 2005, after speaking with Turner, former
Berkeley County Sheriff's Deputy K.C. Bohrer went to O'Dell's place
of employment to question him.  Id. at 3.  O'Dell, a passenger in
another person's vehicle, arrived on the scene at the same time.
Id.  Deputy Bohrer activated his lights, handcuffed and searched
O'Dell, and advised him of his rights.  Id.  Deputy Bohrer asked
O'Dell to voluntarily accompany him to the police station, which he
did.  Id.  O'Dell waived his Miranda rights in writing and orally,
and gave an incriminating taped statement.  Id.

On August 31, 2005, police found the decomposing body of Benny
Brookman ("Brookman") hanging from a tree stand in the woods.  Id.
Brookman, a former paramour of Bivens, had shot and hung himself.
Id.  Nearby, police found Brookman's locked truck, which contained
a suicide note implicating O'Dell in Bivens' murder.[2]  Id.

---

[2] Brookman stated in the suicide note that he planned to pay
O'Dell $ 50,000 to kill Bivens (Dkt. No. 1-1 at 4).  He stated that

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18], DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND [DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION [DKT. NO. 1] WITH PREJUDICE**

On February 21, 2006, O'Dell was indicted for murder and conspiracy to commit murder (Dkt. No. 18 at 2). At trial, the judge found that O'Dell's taped statement to police and Brookman's suicide note were admissible (Dkt. No. 1-1 at 3).

On September 28, 2006, the jury returned a verdict of guilty of first-degree murder and conspiracy to commit murder (Dkt. No. 18 at 3). O'Dell was sentenced to life with mercy, and a consecutive one to five year sentence (Dkt. No. 1-1 at 2).[3] He was resentenced in September 2008 to allow him to perfect his appeal. Id.

**B. Procedural Background**

After O'Dell appealed his conviction, the Supreme Court of Appeals of West Virginia refused his petition on October 28, 2009 (Dkt. No. 18 at 4). He then filed a state habeas petition in the Circuit Court of Berkeley County on March 3, 2010.[4] Id. On July 16, 2012, after habeas counsel was appointed, O'Dell filed an amended petition. Id.

---

he had already paid O'Dell $ 8,000, and owed him $ 42,000 when O'Dell called and told him that the "[j]ob was [d]one." Id.

[3] O'Dell claims that he was sentenced to "16 - Life." (Dkt. No. 1 at 1). The Circuit Court, however, provided a more detailed version of O'Dell's sentence (Dkt. No. 1-1 at 2).

[4] O'Dell's first state habeas petition was filed pro se.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

On January 30, 2013, the Circuit Court denied O'Dell's petition without holding an evidentiary hearing (Dkt. No. 1-1). O'Dell appealed the denial of his petition, which the Supreme Court of Appeals affirmed on November 22, 2013 (Dkt. No. 1-2). That court denied O'Dell's petition for rehearing on January 28, 2014 (Dkt. No. 1-3).

On March 27, 2014, O'Dell filed a second habeas petition in the Circuit Court, alleging ineffective assistance of habeas counsel (Dkt. No. 18 at 6). That petition is still pending, and is the subject of O'Dell's motion to stay in this Court (Dkt. No. 4).

O'Dell filed the instant § 2254 petition on April 21, 2014 (Dkt. No. 1). In his petition, O'Dell raises the following grounds for relief:

• Violation of his Sixth Amendment right to confront witnesses when the trial court allowed police to testify as to medical examiners' findings and conclusions to lay a foundation for the suicide note;

• Violation of his Sixth Amendment right to confront witnesses when the trial court found that the suicide note was not testimonial and admitted it into evidence;

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18], DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND [DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION [DKT. NO. 1] WITH PREJUDICE**

- Violation of his Fifth and Fourteenth Amendment rights when the trial court refused to suppress the statement he gave to police; and,

- Violation of his Fifth and Fourteenth Amendment rights when the trial court instructed the jury to consider portions of a coerced statement invalid instead of instructing the jury to determine whether there was any break in the taint of the coerced statement.

Dkt. No. 1 at 6-13. O'Dell petitions this Court to vacate his state court convictions. Id. at 19.

On April 21, 2014, O'Dell filed a motion seeking a stay and abeyance of his petition pending the outcome of the ongoing state habeas proceedings in the Circuit Court (Dkt. No. 4 at 1). He alleges that his unexhausted claims are being addressed in the pending second state habeas petition, and that he is entitled to a stay and abeyance because his state court procedural status "for tolling and exhausting purposes is confusing." Id. at 1, 4. He argues that he has not been dilatory in exhausting his state court remedies, but that he was ineffectively represented during the pendency of his first state court habeas petition. Id. at 3, 6.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

On May 19, 2014, O'Dell filed a motion seeking to amend his petition and his motion to stay in order to add an additional ground to his petition, that the trial court violated his Fourteenth Amendment right by admitting his "coerced statement" at trial without reviewing the actual videotape of his interview during a pre-trial hearing (Dkt. No. 9 at 1). He contends that this claim has been exhausted in state court. Id. On September 23, 2014, Plumley responded to O'Dell's motion by stating that he does not oppose such a stay pending resolution of the second state habeas petition in the Circuit Court (Dkt. No. 15 at 1).

Magistrate Judge Seibert issued an R&R on November 18, 2014, in which he recommended that the Court (1) deny as moot O'Dell's motions to stay and to amend, and (2) deny and dismiss his petition with prejudice as untimely (Dkt. No. 18 at 13). On November 25, 2014, O'Dell objected to Magistrate Judge Seibert's determination that his petition was untimely (Dkt. No. 20).

## II.   STANDARD OF REVIEW

When reviewing a magistrate judge's report and recommendation made pursuant to 28 U.S.C. § 636, the court must review de novo only the portion to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). As to those portions of a recommendation to which

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 458 F.Supp. 825 (E.D. Cal. 1979).

### III.   APPLICABLE LAW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("the AEDPA") limits the power of the Court to entertain a habeas corpus petition of a state prisoner only to circumstances where he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Importantly, the AEDPA establishes a one-year limitation period within which a petitioner "in custody pursuant to the judgment of a State court" must file a federal habeas petition.  28 U.S.C. § 2244(d)(1).  The limitation period begins to run from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

Court and made retroactively applicable to cases on
collateral review; or
     (D) the date on which the factual predicate of the
claim or claims presented could have been discovered
through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The "date on which the

judgment became final" for purposes of § 2244(d)(1)(A) is the date

of "the conclusion of direct review or the expiration of the time

for seeking such review."[5] Burton v. Stewart, 549 U.S. 147, 156,

127 S.Ct. 793, 799 (2007).

The one-year limitations period is suspended for the time

during which "a properly filed application for State post-

conviction or other collateral review with respect to the pertinent

judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An

application for State post-conviction or other collateral relief is

"properly filed" when "its delivery and acceptance are in

compliance with the applicable laws and rules governing filings."

Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 363-64 (2000).

These laws and rules "usually prescribe, for example, the form of

---

[5] O'Dell does not argue that the government impeded his filing
of the petition, that the Supreme Court created a newly recognized
right, or that newly discovered facts exist. Therefore, §
2244(d)(1)(A) is the correct provision on which the Court will
focus.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id.

The statute of limitations is specific to each claim in a federal habeas petition. See, e.g., Fielder v. Varner, 379 F.3d 113, 118-119 (3d Cir. 2004) (finding that the statute of limitations in § 2244(d)(1) must be applied on a claim-by-claim basis).

The statute of limitations under § 2244 is an affirmative defense, but the Court may raise it sua sponte so long as it warns the petitioner that his case is subject to dismissal and gives him an opportunity to respond before the case is dismissed. Hill v. Braxton, 277 F.3d 701, 705-6 (4th Cir. 2002). In doing so, however, the Court is not required to hold a hearing or furnish "particularly detailed notice." Id. at 707-8. Rather, it must "simply warn" the petitioner that his petition will be dismissed as untimely unless he can demonstrate that it was filed within the proper time period. Id. at 708.

If a petitioner is resentenced, the statute of limitations only begins to run from the date of resentencing if the petitioner challenges the resentencing in his § 2254 petition. Williams v.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

Florida, 221 Fed. Appx. 867, 870 (11th Cir. 2007). If the petitioner only challenges his original conviction, however, and not the resentencing, the statute of limitations begins to run from the date that his original conviction became final. Id. See also Mercer v. Ballard, 2013 WL 1442841 at *5 (N.D.W. Va. Apr. 9, 2013) (overruling the petitioner's objections and dismissing a claim as untimely under the AEDPA when it challenged his original conviction, rather than an aspect of his resentencing). A petitioner who is resentenced merely to account for time served does not restart the one-year limitations period. Graham v. Smelser, 422 Fed. Appx. 705, 707 (10th Cir. 2011).

### IV.  ANALYSIS

Magistrate Judge Seibert raised the issue of timeliness in his R&R, and put O'Dell on notice that the Court could dismiss his petition under the statute of limitations (Dkt. No. 18 at 10-13). Hill, 227 F.3d at 708. O'Dell objected to the R&R, pointing the Court to Jimenez v. Quarterman, 555 U.S. 113, 129 S.Ct. 681 (2009), authority he alleges supports his argument that his petition was timely filed (Dkt. No. 20 at 2). After carefully examining Jimenez, however, the Court concludes that it is inapposite.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

In Jimenez, the petitioner was sentenced for burglary in 1995. Id. at 115, 129 S.Ct. at 683. His attorney filed an appellate brief on his behalf with the Texas Court of Appeals pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396 (1967), and left a copy at the jail where he believed petitioner to be, advising him of his right under Anders to file a pro se brief.[6] Id. at 116, 129 S.Ct. at 683. The petitioner, however, had been transferred to a different facility, and never received the brief, or the notice from the Texas Court of Appeals dismissing his appeal. Id.

When the petitioner learned that his suit had been dismissed, he filed an application for writ of habeas corpus in state court, arguing that he had been denied a meaningful opportunity to appeal. Id. On September 25, 2002, the Texas Court of Appeals agreed, and granted him the opportunity to file an out-of-time appeal. Id. The petitioner filed his appeal, the Texas Court of Appeals

---

[6] Under Anders, if appointed counsel concludes that no non-frivolous grounds exist for appeal, he must furnish the defendant with a copy of his brief, and allow him sufficient time to raise any points he chooses with the court. 386 U.S. at 744, 87 S.Ct. at 1400. Then, the court can examine the case and decide whether it is "wholly frivolous." If it is, counsel may be permitted to withdraw. If it is not, the defendant must have the assistance of counsel to argue the appeal. Id.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

affirmed his conviction, and his time for seeking certiorari expired on January 6, 2004. Id. at 116, 139 S.Ct. at 684.

On December 6, 2004, the petitioner filed a second application for writ of habeas corpus in state court, which was denied on June 29, 2005. Id. He filed a federal petition for habeas corpus on July 19, 2005, arguing that his petition was timely because his criminal judgment became final on January 6, 2004.[7] Id. at 117, 139 S.Ct. at 684.

The district court dismissed the petition as untimely, finding that the start date for the limitations period was October 11, 1996, when the petitioner's time for seeking discretionary review expired, rather than January 6, 2004, when his judgment became final following the Texas Court of Appeals' decision reopening his case. Id. The United States Court of Appeals for the Fifth Circuit denied the petitioner's request for a certificate of appealability. Id. The Supreme Court of the United States granted certiorari, reversed the judgment of the district court, and remanded the case for further proceedings. Id.

---

[7] The petitioner argued that the time during which his second application for writ of habeas corpus was pending was excluded from the one-year limitations period. Id.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

The Supreme Court agreed with the petitioner that the date on which his conviction became "final" was January 6, 2004, when the out-of-time appeal granted by the Texas Court of Criminal Appeals became final. Id. at 119, 129 S.Ct. at 685. It emphasized that, once the Texas Court of Criminal Appeals reopened direct review of the petitioner's conviction, it was no longer final under § 2244(d)(1)(A) because it was "again capable of modification through direct appeal to the state courts and to this Court on certiorari review." Id. at 119, 129 S.Ct. at 686. The Supreme Court, emphasizing that its "decision today is a narrow one," held that, "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." Id. at 121, 129 S.Ct. at 686 (emphasis added).

Relying on Jimenez, O'Dell argues that his resentencing in state court on September 17, 2008, restarted the statutory "clock" on his appeal period (Dkt. No. 20 at 2).[8] He contends that his

---

[8] The Circuit Court of Berkeley County entered an agreed order re-sentencing O'Dell to allow him to file an otherwise untimely direct appeal (Dkt. No. 18 at 12).

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

conviction became "final" on January 26, 2010, when the time to file a petition for certiorari following his direct appeal expired. Id.

In his R&R, Magistrate Judge Seibert found that O'Dell's conviction became final on January 19, 2007, which is when the Circuit Court of Berkeley County filed its post-trial hearing and sentencing order (Dkt. No. 18 at 11). He noted that, although O'Dell filed a notice of intent to appeal on December 8, 2006, he never perfected that appeal. Id.

In West Virginia, a petition for appeal must be perfected within four months of entry of the circuit court's order.[9] W. Va. R. Civ. Pro. 37(b)(3). Therefore, O'Dell had until May 21, 2007, four months after the Circuit Court of Berkeley County's final order, to perfect his appeal, or "to timely file a federal habeas petition or a state habeas petition triggering the tolling

---

[9] O'Dell's direct appeal application was not properly filed within the meaning of the AEDPA, and thus did not toll the limitations period. An application for State post-conviction or other collateral relief is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz, 531 U.S. at 8, 121 S.Ct. at 363-64. It is undisputed that O'Dell did not perfect his appeal in accordance with West Virginia law.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

clause."[10]  Id.  It is undisputed that O'Dell never did so; he filed
his first state habeas petition on March 3, 2010, and his federal
§ 2254 petition on April 21, 2014.  Id.

It would appear that, under Jimenez, the Court must run the
one-year limitations period from January 26, 2010, when O'Dell's
time to file a petition for writ of certiorari following his re-
sentencing expired.  The Court finds, however, that Jimenez is
distinguishable from the instant case for one important reason.
The petitioner in Jimenez initiated state habeas review to re-open
his criminal conviction because he, through the inadvertence of his
counsel, never received a real opportunity for direct review of his
conviction.  Unlike Jimenez, O'Dell had an opportunity for direct
review.  He filed a notice of intent to appeal, but never perfected
that appeal.  He did not initiate state habeas review to reopen his
conviction for direct appeal, but asked the sentencing court to
resentence him, apparently on paper only, to cure the defect.  This
Court does not believe that the Supreme Court's "narrow" holding in
Jimenez was meant to open the door to petitioners like O'Dell, who

_____

[10] The day on which the limitations period begins is excluded
from the calculation.  O'Dell had until May 21, 2007, to file an
appeal, rather than May 20, 2007, because May 20 fell on a Sunday.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

could have appealed in a timely fashion but chose not to, as opposed to the petitioner in <u>Jimenez</u> who was denied due process.

O'Dell's contentions in his petition, including the claim in his motion to amend, relate to his original conviction, and not his resentencing (Dkt. No. 19 at 12).  Therefore, the statute of limitations began to run from the date O'Dell's original conviction became final, and not from the date of resentencing.  <u>Williams</u>, 221 Fed. Appx. at 870.

O'Dell was sentenced on January 19, 2007.  He had four months, or until May 21, 2007, to perfect his appeal.  He failed to do so, and, therefore, the one-year clock began to run from that point.  O'Dell did not file any state or federal habeas petitions that could have tolled the limitations period until March 3, 2010, long after the one-year limitations period expired on May 21, 2008.  Therefore, the Court finds that O'Dell's § 2254 petition, filed on April 21, 2014, was untimely, having been filed nearly six years after the applicable limitations period ended.  The Court need not address O'Dell's motion to stay (Dkt. No. 4) and motion to amend (Dkt. No. 9), as neither remedies the deficiency in timeliness.[11]

---

[11] Staying the proceedings until the second state habeas proceeding has concluded does not change the fact that O'Dell filed

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

For the reasons discussed, the Court **ADOPTS** the R&R (Dkt. No. 18), **DENIES AS MOOT** O'Dell's motion to stay (Dkt. No. 4) and motion for leave to amend (Dkt. No. 9), and **DISMISSES** his petition with prejudice (Dkt. No. 1).

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record and the <u>pro se</u> petitioner, return receipt requested, and to enter a separate judgment order.

DATED: February 5, 2015.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a

_____

his federal petition nearly six years too late. Additionally, the remaining claim O'Dell wishes to add also relates to his original sentence, and would not change the result.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 18],
DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND
[DKT. NO. 9], DENYING AS MOOT PETITIONER'S MOTION FOR STAY AND
ABEYANCE [DKT. NO. 4] AND DISMISSING THE PETITION
[DKT. NO. 1] WITH PREJUDICE**

certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2254(a).

The Court finds that it is inappropriate to issue a certificate of appealability in this matter because the petitioner has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003). Upon review of the record, the Court finds that the petitioner has not made the requisite showing, and **DENIES** a certificate of appealability.