## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TIMOTHY O'DELL,**

      **Petitioner,**

**v.**
                               **Case No. 1:14cv73**
                               **(Judge Keeley)**

**MARVIN PLUMLEY,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On April 21, 2014, the *pro se* petitioner, an inmate incarcerated at Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, along with a motion to proceed *in forma pauperis* ("IFP") with supporting documents, and a Motion for Stay and Abeyance.  ECF Nos. 1, 2, 3 & 4. On April 29, 2014, Petitioner was granted permission to proceed as a pauper but was directed to pay the five dollar filing fee. ECF No. 7. On May 19, 2014, petitioner paid the required fee [ECF No. 10], and filed a Motion for Leave to Amend Petition for Writ of Habeas Corpus and to Amend Motion for Stay and Abeyance.  ECF No. 9. On September 3, 2014, the undersigned made a preliminary review of the petition and found that summary dismissal was not warranted.  Accordingly, the respondent was directed to show cause why the motion for stay and abeyance should not be granted. ECF No. 13. On September 23, 2014, the respondent filed its response.  ECF No. 15. Petitioner did not file a reply.

On November 18, 2014, the undersigned entered a Report & Recommendation ("R&R"), recommending that the petition be denied and dismissed without prejudice as untimely and that Petitioner's motion to stay and motion to amend/correct be denied as moot.  ECF No. 18.  By Order

entered February 5, 2015, the R&R was adopted by the District Judge and a certificate of appealability was denied. ECF No. 22.

Petitioner appealed the Order adopting the R&R.  The Fourth Circuit Court of Appeals granted a certificate of appealability on the issue of timeliness.  Counsel was appointed for Petitioner. The State filed a motion to vacate the certificate of appealability and to dismiss the appeal.  The Fourth Circuit denied the motion to vacate. During briefing, the State conceded that Petitioner's § 2254 petition was timely filed. Thereafter, Petitioner filed an unopposed motion for summary disposition. On February 9, 2016, the Fourth Circuit granted the unopposed motion, reversing this Court's judgment regarding the untimeliness of the petition and remanding the case for further proceedings.  ECF No. 37.

On May 3, 2016, a status conference was held, during which the case was stayed, pending decision by the WVSCA on the appeal of Petitioner's second State habeas petition.  An Order entered the same day, staying the case and directing the Respondent to notify it when the WVSCA rendered its decision. ECF No. 43.

On June 6, 2016, the Respondent filed a Notice, advising the court of the West Virginia Supreme Court of Appeals' ("WVSCA") memorandum decision on the appeal of Petitioner's second State court habeas petition.  ECF No. 46. On July 18, Respondent filed another Notice, advising the Court of Petitioner's request for rehearing to the WVSCA on his second State habeas petition.  ECF No. 49.  On September 12, 2016, Respondent filed a third Notice, advising the Court that the WVSCA had denied Petitioner's petition for rehearing on the denial of his second State habeas petition and had issued its mandate in the matter.  ECF No. 50.

By Order entered September 28, 2016, the stay was lifted and this matter was recommitted to the undersigned. ECF No. 52.  Petitioner filed an Amended Petition on October 7, 2016.  ECF No. 54.  By Order entered October 12, 2016, the Respondent was directed to answer the amended petition. ECF No. 55.  On November 10, 2016, Respondent filed a Motion for Summary Judgment, a

memorandum in support, and a Response.   ECF Nos. 58, 59 & 60.   On November 30, 2016, Petitioner moved to file a reply in excess of the page limits, attaching his response. ECF No. 61.  By Order entered December 5, 2016, Petitioner's motion to exceed the page limits was granted and the Clerk was directed to docket his response separately.   ECF No. 62.   Petitioner's response to Respondent's dispositive motion and his declaration of filing were docked as ECF Nos. 63 & 64.

## A. <u>Facts</u>[1]

On August 24, 2005, in response to a call from Debbie Bivens' ("Bivens") son, Berkeley County Sheriff's Deputy Cpl. Steve Vigh met Bivens' son at her house in Berkeley County for a welfare check, only to find the house locked tight, except for a bedroom window, broken from the outside, through which flies were traveling and a foul odor emanated.  Bivens' decomposing body was found on her bedroom floor with multiple gunshot wounds, a .40 caliber shell casing lying nearby, and a .380 caliber handgun on the floor by the bed.

After news of Bivens' murder was published in the paper, one Ramsey Turner ("Turner"), an acquaintance of Petitioner, met with the police to ask if Bivens had been shot with a .40 caliber weapon, because Petitioner had showed him such a weapon days before the killing, when Petitioner asked him if he would like to make $10,000.00 by picking Petitioner up at 3:15 a.m. the following Monday at a location on Rt. 51 East and driving him home.  Petitioner drove Turner to the spot on the road where he wanted Turner to wait for him.  Turner declined the offer, but told the police that at the time, Petitioner had showed him a loaded .40 caliber semiautomatic with a clip containing hollow point bullets.

Initially identified as a suspect in Bivens' murder was one Benny Brookman ("Brookman"), because he had previously been romantically involved with Bivens and had harassed her after the

---

[1] The facts of Petitioner's underlying criminal case were obtained from the Circuit Court of Berkeley County's Final Order denying petitioner's first amended State habeas petition [ECF No. 58-11] and petitioner's appellate brief on direct appeal. ECF No. 58-3.

relationship ended. Subsequently, Petitioner was identified as a prime suspect based on the information provided by Turner.

However, on August 31, 2005, Brookman's hanged, shot, decomposing body was found dangling from a tree stand in the woods. In Brookman's locked truck, parked nearby, was a suicide note implicating Petitioner in Bivens' murder; indicating that Brookman had hired Petitioner to carry it out; explaining Brookman's expectation of being caught and prosecuted for his role in the murder; and giving Brookman's rationale for taking his own life: he knew he could never survive behind bars. Brookman's death was later ruled a suicide.

On February 21, 2006, Petitioner was indicted in Berkeley County Case No. 06-F-22 for Murder and Conspiracy to Commit Murder.

**B. State Trial Proceedings**

After a 3-day jury trial in Berkeley County Circuit Court, Martinsburg, West Virginia, during which Petitioner was represented by attorney B. Craig Manford, on September 28, 2006, Petitioner was convicted of First Degree Murder with a recommendation of mercy, and Conspiracy to Commit Murder. ECF No. 58-1.

On November 8, 2006, Petitioner was sentenced to life with parole after 15 years on the murder charge and to a one-to-five year sentence on the conspiracy charge, the sentences to be served consecutively. ECF No. 58-2 at 2.

After an agreed-upon re-sentencing for purposes of appeal on September 17, 2008, [ECF No. 58-2 ¶5 at 2] Petitioner filed his direct appeal to the West Virginia Supreme Court of Appeals ("WVSCA").

**C. Direct Appeal**

Petitioner's appeal to the WVSCA, filed by B. Craig Manford, raised these claims of error:

1) the court committed plain and prejudicial error by refusing to suppress the defendant's statement as being the product of coercion and involuntary [ECF No. 58-3 at 38 – 44];

2) the trial court committed plain and prejudicial error when it instructed the jury that they could consider portions of the petitioner's statement to be valid at the same time finding portions of it invalid due to police coercion instead of instructing the jury to disregard the entire statement if they found any of it to be the product of police coercion [id.];

3) the court committed plain and prejudicial error in allowing into evidence the suicide note of Benny Brookman [id. at 39 & 44 – 49];

4) the defendant was prejudiced by the state's failure to disclose the disposition of testing of gunshot residue samples taken from the defendant in violation of the mandates of State v. Youngblood [id. at 39 & 49 – 50];

5) it was error for the court to fail to direct a verdict in favor of the defendant at the close of the state's case-in-chief and at the close of all of the evidence, or in the alternative, the jury's verdict was contrary to the evidence presented [id. at  39 & 50 – 52]; and

6) the cumulative weight of the errors set forth above is sufficient to warrant the granting of a new trial.  ECF No. 58-3 at 38 – 39.

By Order entered October 28, 2009, the WVSCA refused the appeal.  Id. at 39 & 52 - 53.

### D.  First State Habeas

Petitioner filed his first State habeas petition in the Circuit Court of Berkeley County, West

Virginia on March 3, 2010 by filing a *pro se* petition, contending that

1) his confession was obtained by coercion and the court committed plain error by refusing to suppress his statement [ECF No. 58-6 at 5];

2) his conviction was obtained by the unconstitutional failure of the prosecution to disclose exculpatory gunshot residue and glass fragment evidence [id.];

3) trial counsel was ineffective for

a) failing to investigate the prescriptions Petitioner was taking prior and during his statement to police [id.]; and

b) failing to argue Petitioner's Sixth Amendment federal constitutional right to face his accuser, in connection with the alleged suicide note. Id.

Subsequently, Petitioner filed an amended *pro se* petition, a copy of which was not part of

this record but which was obtained by the undersigned.  A careful review of that *pro se* amended

petition reveals that on page 34, Petitioner included this claim:

2.  The trial court violated the petitioner's 4th & 14th Amendment rights of the U.S. Constitution and Article III, § 5 of the West Virginia Constitution by committing plain and prejudicial error when it instructed the jury that they could consider

5

portions of the petitioner's statement to be valid at the same time finding portions of it invalid due to police coercion instead of instructing the jury to disregard the entire statement if they found any of it to be the product of police coercion.

The Berkeley County Circuit appointed Stephanie E. Scales-Sherrin ("Scales-Sherrin") as counsel. Subsequently, attorney Ben Crawley-Woods ("Crawley-Woods") was also appointed as co-counsel. Prior to Crawley-Woods' appointment, however, on July 16, 2012, through Scales-Sherrin, Petitioner filed another amended petition, and a <u>Losh</u>[2] List with exhibits. The second amended habeas petition filed by Scales-Sherrin ostensibly raised only four grounds, reordered and renumbered here for clarity, but among its attached exhibits was "Exhibit F," a copy of Petitioner's 114-page *pro se* amended petition, with its constitutional claim noted *supra,* regarding the jury instruction. The claims raised by Scales-Sherrin's amended petition on behalf of Petitioner were:

1) Admission of Mr. Brookman's presumed suicide note accusing Mr. O'Dell of being Ms. Bivens' murderer deprived Mr. O'Dell of due process as required by the Sixth Amendment of the U.S. Constitution and Article III, §14 of the West Virginia Constitution [ECF No. 58-7 at 11] [because]

a) evidence that the cause of Mr. Brookman's death was suicide was not properly admitted and violated Mr. O'Dell's [federal] constitutional right [under the Confrontation Clause] to confront witnesses against him [<u>id.</u> at 12]; and

b) the Court committed plain and [State and federal] constitutional error by failing to apply the <u>Crawford</u>[3] and <u>Mechling</u>[4] analysis to preclude admission of the presumed suicide note [as a violation of the Sixth Amendment's Confrontation Clause]. <u>Id.</u> at 14.

2) The Court erred by ruling Mr. O'Dell's statement was admissible at a pretrial suppression hearing without reviewing the actual videotape of the statement, [a violation of his State due process rights]. <u>Id.</u> at 20.

3) Defense counsel was ineffective for

---

[2] <u>Losh v. McKenzie</u>, 166 W.Va. 762, 277 S.E.2d 606 (1981).

[3] <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

[4] <u>State of West Virginia v. Mechling</u>, 633 S.E.2d 311 (W.Va. 2006).

a) failing to inform the Court of important distinctions between the circumstances of this case and <u>State v. Satterfield</u>[5] that demonstrate the inadmissibility of the presumed suicide note in this case [as a violation of the 6th Amendment's Confrontation Clause] [<u>id.</u> at 19];

b) failing to present necessary expert witnesses on Mr. O'Dell's behalf [to prove his confession was coerced] [<u>id.</u> at 22 – 23]; and for

c) defense counsel's own prejudicial statements toward his client. <u>Id.</u> at 23 – 24.

4) The cumulative weight of all the errors within Mr. O'Dell's trial warrant the granting of a new trial. <u>Id.</u> at 24.

Further, because certain grounds were not specifically waived on petitioner's <u>Losh</u> list, were not addressed in any way in the amended petition, its memorandum in support, or in the *pro se* petition, and were not "factually or legally supported whatsoever[,]" the Circuit Court of Berkeley County listed them but found that "the record is plain that the Petitioner is not entitled to relief on these grounds" and summarily denied them as "unsupported claims that are randomly selected from the list of grounds[.]" ECF No. 1-1 at 16. Those grounds[6] were:

33) refusal of continuance;

34) refusal to subpoena witness;

36) lack of full public hearing;

43) claims of prejudicial statements by trial judge; and

44) claims of prejudicial statements by prosecutor.

Scales-Sherrin included within the conclusion of her amended petition a request that the court also consider "all issues raised" in the Petitioner's *pro se* amended petition, "attached as Exhibit F[.]" <u>Id.</u> at 25.

---

[5] <u>State of West Virginia v. Satterfield</u>, 193 W. Va. 503 (W.Va. 1995).

[6] The grounds as listed reflect their original numeration on the <u>Losh</u> list.

Upon a full review of the entire record, after generally finding that none of Petitioner's claims stated a constitutional error or indicated any need for an evidentiary hearing, on January 30, 2013, the Circuit Court of Berkeley County denied relief.  ECF No. 58-11.

Petitioner, now through counsel Ben Crawley-Woods, timely appealed the denial of his first amended State habeas petition to the WVSCA, raising four claims, contending that:

1) the Circuit Court committed reversible error by failing to grant Petitioner's request for a new trial on the basis that a presumed suicide note, which accused Petitioner of being the victim's murderer and was admitted as evidence against Petitioner at trial, deprived Petitioner of due process as required by the Sixth Amendment of the U.S. Constitution and Article II, § 14 of the West Virginia Constitution. ECF No. 58-12 at 3 & 14 – 15.

> a) The suicide note was clearly testimonial under applicable standards. Id. at 3 & 15 – 19.

> b) Reliance on a hearsay exception to admit the testimonial suicide note as evidence against Petitioner at trial was a constitutional error. Id. at 3 & 19 – 22.

2) The Circuit Court committed reversible error by failing to grant Petitioner's request for a new trial on the basis that Petitioner's videotaped statement, which Petitioner alleges was the involuntary result of coercive police activity, was admitted as evidence against Petitioner at trial without the Circuit Court first reviewing the actual videotaped statement at the pre-trial suppression hearing to determine its admissibility under the totality of circumstances. Id. at 3 and 22 – 25.

3) The Circuit Court committed reversible error by failing to grant Petitioner's motion for leave to conduct discovery and request for an evidentiary hearing in order to further develop the factual basis for his claims and present expert testimony regarding the coercive tactics police utilized within the interrogation of Petitioner. Id. at 3 & 25 – 27.

4) The Circuit Court committed reversible error by failing to grant Petitioner's request for a new trial on the basis that he was denied effective assistance of counsel at trial.  Id. at 3 & 27 – 28.

On November 22, 2013, finding no substantial question of law and no prejudicial error, the WVSCA affirmed.  ECF No. 58-13. On January 28, 2014, the WVSCA refused petitioner's petition for rehearing. ECF No. 1-3 at 2.

**E. Second State Habeas**

On March 27, 2014, petitioner filed a second *pro se* State habeas petition in the Circuit Court of Berkeley County, West Virginia, raising grounds re-ordered here for clarity, contending that habeas counsel in his first State habeas petition was ineffective for his failure to:

1) raise on appeal to the WVSCA all of the unspecified Constitutional grounds that the lower court previously denied in its final order denying his first state habeas petition [ECF No. 58-14 at 9 & 12];

2) send the appropriate appendix items to the WVSCA, to aid in its review, including [id. at 10 & 12]:

      a) the suicide note found near Brookman's body [id. at 10];

      b) the entire transcript of Petitioner's police interview [id.];

      c) a copy of the Circuit Court motion Petitioner filed for leave to conduct discovery and for expenditure of expert fees to retain an expert on the dynamics of coerced confessions [id. at  11]; and

      d) either a full transcript or a copy of Petitioner's videotaped statement [id.]; and

3) for failing to give proper legal arguments regarding controlling law to the WVSCA. Id. at 10 & 13.

On August 1, 2014, through newly-appointed counsel, attorney Jason M. Stedman, Petitioner filed an amended petition in his second State habeas action in the Circuit Court of Berkeley County, West Virginia, raising these claims:

1) counsel in his first habeas action was ineffective for not preparing an adequate appendix and proper argument of law and facts to support the issues which were raised in that appeal. ECF No. 58-15 at 2. Those issues were:

      a) Mr. Brookman's suicide note was admitted at trial in violation of the Confrontation Clause of the United States and West Virginia Constitutions [id. at 4];
      b) the circuit court failed to conduct a suppression hearing prior to admitting his pretrial statement [id.];

      c) the circuit court improperly denied his motion to conduct discovery in his first habeas action on his claim that his statement was coerced [id. at 5]; and

      d) trial counsel was ineffective.  Id. at 10.

Further, Petitioner alleged that his first habeas counsel had abandoned three primary Constitutional claims ruled on by the Circuit Court, and despite Petitioner's pleas that he raise them, counsel "only agreed to supplement Petitioner's pro-se [amended] petition as an Exhibit and ask the

Court for a ruling[.]" Id. at 3. For the first time, Petitioner explicitly identified those "three vital

Constitutional issues [id. at 7] as:

> A) the trial court violated Petitioner's Fifth and Fourteenth Amendment constitutional rights by refusing to suppress the Petitioner's statement as being the product of coercion, threatening, and/or product of false hope [id., n2 at 7];
>
> B) the trial court violated Petitioner's Fifth and Fourteenth Amendment constitutional rights by committing plain and prejudicial error when it instructed the jury that they could consider portions of Petitioner's statement to be valid at the same time finding portions of it invalid due to police coercion, instead of instructing the jury to disregard the entire statement if they found any of it to be the product of police coercion [id.]; and
>
> C) Petitioner's Sixth Amendment constitutional rights were violated by trial counsel's ineffectiveness for failing to object to the hearsay testimony of Officer Patrick Thompson, who testified as to the Chief Medical Examiners' findings and conclusions, without the medical examiners' testimony or any of their documentations concerning the death of Benny Brookman, the alleged author of the suicide note. Id.

The State moved to dismiss.  ECF No. 58-16.  By Order entered April 15, 2015, the Circuit

Court of Berkeley County, West Virginia granted the State's motion and dismissed the amended

petition. ECF No. 58-18.

Petitioner filed a *pro se* appeal of the denial of his second amended State habeas petition to

the WVSCA, raising these assignments of error:

> 1) Petitioner's previous habeas counsel provided constitutionally ineffective assistance in the appeal he filed in the WVSCA of the denial of Petitioner's [first State habeas petition] when he failed to argue that the presumed suicide note found near Mr. Brookman's body did not constitute a dying declaration because Petitioner's co-conspirator's death was not a suicide  [ECF No. 58-19 at 31]; and
>
> 2) the answers given by the circuit court  to the  jury's questions during deliberations  diluted its clear instruction that the State had to prove that Petitioner's statement was voluntarily made without threat, coercion, promise, or reward. Id. at 7.

Petitioner also argued that he had "begged and pleaded with [Mr. Crawley-Woods] to raise

the three vital Constitutional claims that [Petitioner] believed were his strongest claims [id. at 23]" in

his first State habeas appeal, again identifying those claims as:

10

A) the trial court violated Petitioner's Fifth and Fourteenth Amendment constitutional rights by refusing to suppress the Petitioner's statement as being the product of coercion, threatening, and/or product of false hope [id., n.35 at 23];

B) the trial court violated Petitioner's Fifth and Fourteenth Amendment constitutional rights by committing plain and prejudicial error when it instructed the jury that they could consider portions of Petitioner's statement to be valid at the same time finding portions of it invalid due to police coercion, instead of instructing the jury to disregard the entire statement if they found any of it to be the product of police coercion [id.]; and

C) Petitioner's Sixth Amendment constitutional rights were violated by trial counsel's ineffectiveness for failing to object to the hearsay testimony of Officer Patrick Thompson, who testified as to the Chief Medical Examiners' findings and conclusions, without the medical examiners' testimony or any of their documentations concerning the death of Benny Brookman, the alleged author of the suicide note. Id.

The State responded. ECF No. 58-20.  Petitioner replied.  ECF No. 58-21.  By Memorandum

Decision entered on June 3, 2016, the WVSCA affirmed the Berkeley County Circuit Court's denial

of Petitioner's second state habeas petition.  ECF No. ECF No. 58-22.

## F. Petitioner's Third State Habeas: Original Jurisdiction Petition for Writ of Habeas Corpus to the WVSCA

On September 20, 2016, Petitioner filed an original jurisdiction petition for writ of habeas

corpus to the WVSCA, raising one ground:

1) Was the trial court's "series of statements" jury instruction wrong as a matter of law, thereby allowing the jury to consider Petitioner's coerced statement, in violation of the United States Constitution and the West Virginia Constitution?  ECF No. 58-23.

Per a telephone call to the WVSCA Clerk's Office, this original jurisdiction petition is still

under review.

## Petitioner's Original § 2254 Petition

Petitioner raised four grounds for relief, contending that

1)  Petitioner's Sixth Amendment right was violated by the trial [sic] committing error when it allowed police to testify towards medical examiners [sic] findings and conclusions, without the medical examiners [sic] testimony themselves [sic] in order to lay a foundation for admission of an alleged suicide note as evidence under the dying declaration exception.  ECF No. 1 at 6.

11

2) Petitioner's Sixth Amendment right was violated by the trial court when it allowed the alleged suicide note in at trial against the Petitioner as the note was "Testimonial" under Crawford v. Washington, 541 U.S. 36 (2004).  Id. at 9.

3) The trial court violated Petitioner's Fifth and Fourteenth Amendment right by refusing to suppress Petitioner's statement as being the product of coercion, threats, promises or reward, and product of false hope.  Id. at 11.

4) Trial court violated Petitioner's Fifth and Fourteenth Amendment rights when the Court instructed the jury that they could consider portions of a coerced statement invalid instead of instructing the jury to determine whether there was any break in the taint of the coerced statement. Id. at 12.

As relief, petitioner asked that his convictions be vacated. Id. at 19.

**The Amended § 2254 Petition**

In the amended petition, Petitioner notes that he is raising only one ground for relief, "which is Ground Four . . . [in his original] § 2254 Petition" and waives all other grounds previously raised. ECF No. 54, n1 at 1.  Petitioner asserted that this claim is exhausted because it was raised on direct appeal to the WVSCA.  Id. at 12.  He asserts that:

1) The trial court's "series of statements" jury instruction allowed the jury to consider portions of Petitioner's statement that were subsequent to a coerced portion, even though there were no intervening events that broke the "causal connection" between the portions, in violation of the United States Constitution. Id. at 5.

As relief, Petitioner requests that his petition be granted, his convictions and sentences be vacated, and unless the State commences a new trial within a court-specified number of days, that his release be ordered.  Id. at 15.

**Respondent's Motion for Summary Judgment**

Respondent argues that summary judgment should be granted in its favor because Petitioner can neither demonstrate that the State Court's rulings on his claims are contrary to, or an unreasonable application of clearly established federal law, nor that the State Court's decisions were based on an unreasonable determination of the facts in light of the evidence presented.  ECF No. 59 at 1. The single ground raised in the Amended Petition regarding an improper jury instruction

12

regarding Petitioner's claim of a coerced confession has no merit.  Petitioner's statement was voluntary [id. at 59) and the jury was properly instructed.  Id.  at 13.

**Petitioner's Response to Respondent's Motion for Summary Judgment**

Petitioner reiterates his arguments and attempts to refute the Respondent's on the same, for the first time, citing to federal law in support of his claims.  ECF No. 63.

## II. Standard of Review

### A. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. It is well recognized that any

permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588 (1986).

**B.  <u>Federal Habeas Review Under 28 U.S.C. § 2254</u>**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Federal habeas relief does not lie for errors of state law." <u>Thomas v. Taylor</u>, 170 F.3d 466, 470 (4th Cir. 1999); <u>see</u> <u>also</u>, <u>Weeks v. Angelone</u>, 176 F.3d 249, 262 (4th Cir. 1999). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

The "exhaustion" doctrine requires a federal habeas Petitioner to have presented all federal claims - *in federal terms* - to the highest state court prior to presenting them for federal habeas review. <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971) (citations omitted). This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Id.</u> To exhaust a claim in state court, Petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court." <u>Diaz v. Weisner</u>, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C. Aug. 1, 2006). "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (citations omitted).

Even if a Petitioner is found to have exhausted his state remedies, the federal court may not grant habeas relief for claims adjudicated on their merits by the state court unless the state court's adjudication:

> 1) resulted in a decision that was contrary to, or involved in an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413.  A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a Petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on Petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

Habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas Petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

### III. Analysis

#### A. Exhaustion of State Court Remedies

As noted *supra*, a petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies. See 28 U.S.C. § 2254(b). Therefore, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Castille v. Peoples, 489 U.S. 346, 349, *reh'g denied*, 490 U.S. 1076 (1989). Concerns of comity dictate that the State must first be afforded a full and fair opportunity to pass upon and correct the alleged violation of its prisoners' federal rights. See Duncan v. Henry, 513 U.S. 364, 365 (1995); see also Footman v. Singletary, 978 F.2d 1207, 1210–11 (11th Cir. 1992) (finding that comity requires that the State be given the first opportunity to address and resolve the merits of an inmate's claims). To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), *cert. denied*, 522 U.S. 833 (1997).

16

"A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Id. at 911. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. at 32; see also Howell v. Mississippi, 543 U.S. 440, 444, 125 S.Ct. 856, 859 (2005).

In West Virginia, the exhaustion of state remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the WVSCA. See Moore v. Kirby, 879 F.Supp. 592, 593 (S.D. W.Va. 1995); see also Bayerle v. Godwin, 825 F.Supp. 113, 114 (N.D. W.Va. 1993). A federal court may only consider those issues the petitioner presented to the state court, and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

It is Petitioner's burden to demonstrate that he has exhausted his state judicial remedies. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998), cert. denied, 523 U.S. 371 (1998). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Id. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Id.

A federal court may only consider those issues the petitioner presented to state court. Picard v. Connor, 404 U.S. 270 (1971). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c).

If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995).  Further, in addition to providing the state court with the facts supporting the claimed constitutional violation, the petitioner must also "explain how those alleged events establish a violation of his constitutional rights." <u>Mallory v. Smith</u>, 27 F.3d 991, 994 (4th Cir. 1994).  Finally, a petitioner must show that the claims he raised in the state proceedings are the exact same claims he is raising in a federal habeas petition. <u>See</u> <u>Pitchess v. Davis</u>, 421 U.S. 482, 487 (1975); <u>see</u> <u>also</u> <u>Picard,</u> 404 U.S. at 275 – 76. Not only must the claim itself be the same, but the same factual grounds must be raised in support of the claims in state court as in federal court, and a specific federal constitutional claim must be raised in the state proceedings. <u>Anderson v. Harless</u>, 459 U.S. at 6.

Where a petitioner has failed to exhaust his state court remedies, the federal petition should be dismissed.  <u>McDaniel v. Holland</u>, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986)(citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 477 (1973)).

Here, as noted *supra,* on May 3, 2016, Petitioner was granted a stay to finish exhausting the claims in his second amended State habeas petition. ECF No. 43.   On September 12, 2016, Respondent notified the Court that the WVSCA had denied Petitioner's petition for rehearing on his [second State] habeas petition and that mandate had issued.  ECF No. 50. On September 8, 2016, Petitioner wrote a letter to the Clerk of Court, attention to the District Judge, advising the WVSCA had refused his petition for rehearing on his [second State] habeas petition and further advising that he intended to file an original jurisdiction petition for a writ of habeas corpus in the WVSCA.  ECF No. 51.   That original jurisdiction petition for habeas corpus relief in the WVSCA was filed September 20, 2016. The stay in this case was lifted on September 28, 2016. <u>See</u> ECF No. 52. Thereafter, Petitioner filed his Amended Petition, waiving all prior claims, including those he had

been granted a stay to finish exhausting, except for one, raised as Ground Four in his original § 2254 petition and which he contends was raised on direct appeal to the WVSCA.

The Respondent's Answer concedes that Petitioner has exhausted his State court remedies because the issue of Petitioner's coerced statement was raised in both his State habeas appeals. ECF No. 60 at 2.  Respondent's memorandum of law in support of its summary judgment motion makes no further mention of exhaustion, merely noting that Petitioner's only claim is still pending in the WVSCA.  ECF No. 59 at 3. However, the Respondent does note that Petitioner's Amended Petition "fails to cite to any federal law, let alone suggest that the State Court's decision is contrary to such law." Id. at 7.

In his response, Petitioner makes no argument regarding exhaustion of his claim. ECF No. 63.

 Accordingly, the undersigned finds it necessary to make a finding regarding whether the ground for relief in the petitioner's Amended Petition is sufficiently exhausted.

Petitioner's sole claim in his amended § 2254 petition is that "[t]he trial court's "series of statements" jury instruction allowed the jury to consider portions of Petitioner's statement that were subsequent to a coerced portion, even though there were no intervening events that broke the "causal connection" between the portions, in violation of the United States Constitution. ECF No. 54 at 5. Plaintiff claims he raised this claim on direct appeal, and thus it is exhausted. Id. at  12.

Although it is true that Petitioner raised a somewhat similarly-worded ground for relief regarding his allegedly coerced statement in his direct appeal, on appeal, he made no mention of a federal constitutional claim.  Petitioner's claim on direct appeal was that:

> The trial court committed plain and prejudicial error when it instructed the jury that they could consider portions of the petitioner's statement to be valid at the same time finding portions of it invalid due to police coercion instead of instructing the jury to disregard the entire statement if they found any of it to be the product of police coercion.

ECF No. 58-3 at 38 – 39. His argument in support alleged no State or federal constitutional violation, thus his claim on appeal did not exhaust the claim made in his amended § 2254 petition.  "Not only must the claim itself be the same, but the same factual grounds must be raised in support of the claims in state court as in federal court, and a specific federal constitutional claim must be raised in the state proceedings." Anderson v. Harless, 459 U.S. at 6.

Further review indicates that Petitioner's first amended State habeas petition *filed through counsel* does not explicitly state the same claim Petitioner now raises in his amended § 2254 petition. Rather, it merely states that "the court erred by ruling Mr. O'Dell's statement was admissible at a pretrial suppression hearing without reviewing the actual videotape of the statement, [a violation of his State due process rights]." ECF No. 58-7 at 20. Further, that claim included no argument in support that alleged any violation of a federal Constitutional right. However, a careful review of that amended petition indicates that in its conclusion, counsel included this statement: "Mr. O'Dell [also] requests that all issues raised in Mr. O'Dell['s] self-authored Amended Petition For Writ of Habeas Corpus Relief attached as Exhibit F, be fully addressed and considered by this Court." ECF No. 58-7 at 25. Although neither Petitioner nor the Respondent herein provided the Court with a copy of this *pro se* amended petition, it is apparent from a careful review of the record that both the Circuit Court of Berkeley County and the WVSCA both considered the claims Petitioner made in that *pro se* amended petition, along with the claims in the amended petition filed by counsel, which incorporated the *pro se* amended petition by reference [see  ECF No. 58-7 at 25, ECF No. 58-10 at 5, & ECF No. 58-22 at 4] in reaching their decisions.  Accordingly, the undersigned obtained a copy of this *pro se* amended habeas petition from the Clerk of the Circuit Court of Berkeley County to clarify the record.

Therefore, then, although not explicitly stated in either Petitioner's amended brief filed by counsel, or in the Circuit Court of Berkeley County's January 30, 2013 Final Order Denying Amended Petition for Writ of Habeas Corpus, it is apparent that the Circuit Court of Berkeley County did review the federal Constitutional claim regarding the "series of statements" jury

instruction in the attached "Exhibit F" *pro se* amended petition, and it ruled generally that "each of Petitioner's claims fails to show any constitutional error or any need for an evidentiary hearing." ECF No. 58-11 at 2; see also ECF No. 58-22 at 4.  Further, in the appeal of Petitioner's first amended State habeas petition, although the federal Constitutional claim regarding the "series of statements" jury instruction was again not explicitly stated, this *pro se* amended petition was again considered. Petitioner's brief to the WVSCA on appeal of his first State habeas petition only explicitly stated claims that were somewhat related to Petitioner's amended § 2254 petition claim about a coerced statement, but neither claim was the *same* claim he now raises in his amended § 2254 petition:

> 2) The Circuit Court committed reversible error by failing to grant Petitioner's request for a new trial on the basis that Petitioner's videotaped statement, which Petitioner alleges was the involuntary result of coercive police activity, was admitted as evidence against Petitioner at trial without the Circuit Court first reviewing the actual videotaped statement at the pre-trial suppression hearing to determine its admissibility under the totality of circumstances.
>
> 3) The Circuit Court committed reversible error by failing to grant Petitioner's motion for leave to conduct discovery and request for an evidentiary hearing in order to further develop the factual basis for his claims and present expert testimony regarding the coercive tactics police utilized within the interrogation of Petitioner.

ECF No. 58-12 at 3 & 22-27.  Again, not only are these different claims, Petitioner included no argument alleging that a federal Constitutional violation had occurred. The WVSCA's November 22, 2013 Memorandum Decision denying the first State Habeas appeal makes no specific mention of a *pro se* amended petition having been filed, other than to generally note that in reaching its decision, it considered "the parties' briefs and the record on appeal." ECF No. 58-13 at 2.  However, the WVSCA's June 3, 2016 memorandum decision denying Petitioner's *second* State habeas petition does specifically state that

> Petitioner had his omnibus habeas corpus proceeding in *O'Dell* v. *Ballard,* No. 13-0220, 2013 WL 6152368 (W.Va. Nov. 22, 2013) (memorandum decision) . . . In that case, petitioner was appointed counsel who filed an amended habeas petition. ***In the amended petition, counsel incorporated by reference a second amended petition that petitioner prepared pro se.*** Finally, counsel also filed exhibits and a *Losh* checklist . . . ***In its January 30, 2013, order denying habeas relief: the circuit court***

> ***addressed both amended petitions*** and specifically found that "[p]etitioner's claims
> fail[ed]to show any constitutional error or any need for an evidentiary hearing."[]

ECF No. 58-22 at 4 (emphasis added).

Accordingly, then, Petitioner's sole claim raised in his amended § 2254 petition appears to have been fully exhausted, not in his direct appeal as he asserts in his amended § 2254 petition, but as part of the record in his first State amended habeas petition and its appeal.  Thus, the fact that Petitioner still has a third State habeas original jurisdiction petition pending with the WVSCA, alleging a Constitutional violation by the trial court's "series of statements" jury instruction [ECF No. 58-23 at 3] does not negate the fact that the sole claim in his amended § 2254 is already exhausted.  Accordingly, Petitioner's claim will be given review.

**B. "Series of Statements" Jury Instruction**

Petitioner contends that in violation of the United States Constitution, the trial court's "series of statements' jury instructions permitted the jury to consider portions of his statement that were given subsequent to a coerced portion, even though there were no intervening events that broke the "causal connection" between the portions. Amended Petition, ECF No. 54 at 5.

At issue is the voluntariness of Petitioner's statement to the authorities after being identified as a suspect in Bivens' death, during which he made inculpatory remarks.  At a September 15, 2006 suppression hearing, the undisputed facts were that Petitioner was originally approached at his place of work via a traffic stop by a deputy sheriff, taken out of his vehicle, placed on the ground, searched, handcuffed, then un-handcuffed, advised of his rights, and asked to come to the sheriff's office voluntarily to be interviewed. Petitioner agreed to do so.  ECF No. 58-25 at 4 – 11. Once at the sheriff's office, he waived his Miranda rights and voluntarily gave a videotaped statement.  He was arrested immediately afterwards.  ECF No. 58-25 at 4 – 5.  The question at issue in the suppression hearing was whether anything happened between Petitioner's release after the initial investigative detention and his subsequent statement at the sheriff's office, sufficient to overcome Petitioner's free

will, such that his videotaped statement at the sheriff's office was coerced and not voluntary.  Id. at 5 – 6.  Petitioner indicated in his videotaped statement that he was not being coerced to talk by saying "Right, I'm volunteering to help you out."  Id. at 13 – 14.  At no time during the statement did Petitioner invoke his right to an attorney.  Id. at 17.  Trial counsel even conceded that "- - no appellate court is going to find, I don't believe, this wasn't a voluntary statement . . . I don't believe anyone would find my client's will was overborn by these statements."  Id. at 21. At the conclusion of the hearing, the Court found that Petitioner had not been coerced, that his statement was voluntarily given, and it would be admissible at trial.  Id. at 37.

At trial, before beginning deliberations, the Circuit Court charged the jury, *inter alia,* instructing it that

> The Court instructs the jury that under the law of this state the confession or statement against interest offered in evidence by the State may be considered by the jury in determining the guilt or innocence of the defendant of the crime charged in this case only if the jury believes that the State has proved by a preponderance of the evidence that such statement was freely and voluntarily made without threat, coercion, promise or reward, and that if you do not believe that the State has met this burden of proof, it is your duty to disregard such statement entirely.

ECF No. 58-29 at 12 – 13.

Subsequently, after deliberating for a period of time, the jury sent out several questions. At one point, they asked: "when the defendant signed an agreement to the free and voluntary statement prior to the actual interrogation, at what point does the coercion invalidate the statement." Id. at 77. The Circuit Court instructed the jury regarding the issue of voluntariness as it related to Petitioner's statement:

> THE COURT: Please be seated. Ladies and gentlemen of the jury, I've received your question and I think the best way I can answer that is to say that any portions of the statement that you find were not freely and voluntarily made without threat, coercion, promise or reward may not be considered by you. Remember that it's the burden of the State to prove by a preponderance of the evidence which is a lesser standard than reasonable doubt, it's more likely than not, has to be proved. State bears the burden of proving to you that the statement or any portions thereof were made freely and voluntarily without threat, coercion, promise or reward and that burden is by a preponderance of the evidence. So anything that you find in that statement that you

feel was not made freely and voluntarily without threat, coercion, promise, or reward you must not consider.

Clear it up any? Okay, if I get one head nodding yes, that's good. You have to go back and discuss it all. It seems as if the question is asking when or if and does it knock out the whole statement or not and things like that, and the statement should be taken as a series of statements and any portion thereof that you find was not the produce of freely and voluntarily made without threat, coercion, promise, or reward then you must not consider that. Got it? I will send you all back.

Id. at 85.

After deliberating again, the jury sent out two more questions regarding voluntariness:

THE COURT: Two more questions. Two more questions. The first is at the point which the perceived coercion occurs, does it invalidate the remaining series, I believe that's series, I will bring them out and make sure that that word is series, of statements as related to the initial coerced statement.
Second question: What classifies the separation of segment and/or segments from one another.

I think I'm just going to bring them out and say any portions of that statement that you feel were not freely or voluntarily made must be disregarded, is that okay with counsel, Mr. Manford?

MR. MANFORD: Yes.

THE COURT: The State?

MS. GAMES-NEELY: It's the law.

THE COURT: Let's bring them on out.

(Jury present.)

THE COURT: Please be seated. Ladies and gentlemen of the jury, I just read the question back just so I make sure because there's one word I'm not sure of, so correct me if I'm wrong as to what this question is. At the point at which the perceived coercion occurs does it invalidate the remaining series of statements as related to the initial coerced statement. Is that the correct question? The word I wasn't sure of was series.

JUROR: That's correct.

THE COURT: Thank you. Okay. Then the second question what classifies the separation of segment and/or segments that you find were not freely and voluntarily made you must disregard. Don't know if that was a lot of help or not but –

JUROR: Can you say that one more time?

24

THE COURT: Sure. Any portions of the statement that you find were not freely--actually, I need to change that because the burden is on the State. Any portions of the statement that have not been proved beyond a reasonable doubt to your satisfaction were made freely and voluntarily you must disregard. Do you understand what I'm doing? I kind of have to flip it because the defendant does not have to prove that they were made freely and voluntarily. The State has to prove that - - or not made freely and voluntarily. The State has to prove by a preponderance of the evidence that the statements were made freely and voluntarily. So any portion that you do not find that were not proved to your satisfaction by a preponderance of the evidence were made freely and voluntarily[,] you must disregard. Are we clear?

JUROR: Can I ask up there?

THE COURT: Yeah. Counsel, you want to come on up? I may not be able to answer your question but we can put it on the record. Why don't you come on up?

(Conference at the bench between the Court, Counsel and Juror with Defendant present, as follows:)

JUROR: Your Honor, can she accompany—

THE COURT: Sure.

CLERK: Judge is this considered deliberations?

THE COURT: Well, I'm not going to make a decision. You can ask a question while everybody is here.

JUROR: Okay, the question I have and—

THE COURT: Can you hear, Craig?

MR. MANFORD: Yes.

JUROR: And the rest of us have is that on page 14. It says that—

THE COURT: Your duty to disregard such statement?

JUROR: Right, Right. This right here is where us--is made without any of this.

THE COURT: Right.

JUROR: Our question is the answer that was given to the questioning which was the result of this, any answer given after that that relates to the original given from this.

THE COURT: Okay, Counsel, if you all want to go back out. We'll try to explain that the best I can.

(In open court.)

THE COURT: If you find any of those statements whether it relates back or not, if you find that they were not freely and voluntarily given then you must not consider it, or conversely, since I have to make sure that there's no burden on the defendant to prove that they were freely and voluntarily or not freely and voluntarily given, the burden is on the State to prove that they were freely and voluntarily given, but any statement before or after as it goes through of any issue is a factual determination as to whether or not they were freely and voluntarily given, and if you determine that any portion of that statement was not freely and voluntarily given then you must disregard it. And I understand your question, I really can't answer it because it is a factual determination that you have to make as to whether or not a subsequent statement was freely and voluntarily given or not. Does that help? Yes sir?

JUROR: Subsequent statements are not automatically invalidated by original coercion to another earlier exchange? In other words—

THE COURT: Yeah, I think I understand.

JUROR: Our position is does it automatically invalidate from that point on without regard of anything else that occurred that—

THE COURT: If you were to find that subsequent statements were freely and voluntarily given, if you find that a statement is freely and voluntarily, if you find by a preponderance of the evidence that that happened then you can consider. Does that help answer the question? JUROR: If it's a result of the initial—

THE COURT: Well, see, that's a factual determination as to whether that second statement was or was not freely and voluntarily given. That's your decision to make.

MR. MANFORD: Judge, can we approach?

THE COURT: Sure.

(Conference at the bench between the Court and Counsel with the Defendant present, as follows:)

THE COURT: I understand where they're going in that it's fruits of the poisonous tree.

MR. MANFORD: That flow, exactly.

THE COURT: And it doesn't apply here because it's not illegally obtained evidence for the statement because it's not in its entirety.

MR. MANFORD: My request would be if they--it's sort of like can you rehabilitate or not, okay? But it's a factual thing. Do they understand that?

THE COURT: That's what I'm trying to tell them.

26

MR. MANFORD: But I don't know, some of them get it and some aren't.

THE COURT: Do you want me to say that just in that way?

MR. MANFORD: Timmy, it's—

DEFENDANT: It's your decision.

MR. MANFORD: It's your life. Yeah, that's what I'm getting at.

THE COURT: Do you want me to say that they have to make the determination as to whether the subsequent statement was freely and voluntarily given?

MR. MANFORD: Yes, sir.

THE COURT: I think that's a fair statement of law.

MS. GAMES-NEELY: All right. What happens is they have to go through the statement and they need to decide.

THE COURT: Don't let me forget what I'm saying there that they have to determine whether it's--whether that statement is rehabilitated--or that second statement is freely and voluntarily given is what they have to determine. If they feel the first portion of it was not they can disregard that, but they can consider a second portion if they feel it is freely and voluntarily given. That's the rehabilitation.

MS. GAMES-NEELY: Right.

THE COURT: That's the factual determination for--I'll just tell them.

MR. MANFORD: As long as they know it's a factual—

THE COURT: That's what I'm going to tell them it is a factual determination. I can't call it.

MR. MANFORD: What else can we say?

THE COURT: Okay. Maybe this will help. Counsel--and Mr. Manford used a very good analogy, rehabilitation, to rehabilitate the statement. It is a factual determination that you have to make as to whether or not any subsequent statement on the issue has been proved to your satisfaction to have been freely and voluntarily given; is that correct, Mr. Manford? Is that your—

MR. MANFORD: Yes, sir.

THE COURT: Do you understand that you have to say whether or not the subsequent statement because it's a factual issue, whether or not the subsequent statement was

freely and voluntarily given. Does that help clear it up? JUROR: What exactly do you mean by subsequent?

THE COURT: I don't know, that's your all's words. I can't answer that. That's factual too. But you say the remaining series of statements. That would be anything past what you looked at in the beginning and then what came out. I mean, to answer your question, and it's factual, you all are the trier of facts. You have to determine what is a statement, a couple statements, a continuing statement, whether or not it's freely and voluntarily given. You have to make that determination. Does that help? Send you all back in then. Thank you.

(Jurors retired to their jury room to deliberate upon their verdict.)

Id. at 88 - 95.

Jury instructions are matters of state law and procedure which do not invoke federal constitutional guarantees. See Estelle v. McGuire, 502 U.S. 62, 71 – 72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); Gilmore v. Taylor, 508 U.S. 333, 349 – 50 (1993) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of state evidentiary rules."). The proper inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." See Cupp v. Naughten, 414 U.S. 141, 147 (1973). When a trial court's instruction is ambiguous, the court must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally-relevant evidence." Boyde v. California, 494 U.S. 370, 380 (1990).

Petitioner's challenge to the "series of statements" jury instructions is merely a challenge to the factual determination by the jury that his statement was voluntary and not coerced, a determination supported by the record.  When a Petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a

factual issue made by a State court shall be presumed correct,' and the burden is on Petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d at 439.

Habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas Petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

As noted *supra,* the Court's review of this claim is confined "to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Bell, 236 F.3d at 158. The Fourth Circuit has held "that the question on collateral review is whether the challenged instruction by itself so infected the entire trial that the conviction violated due process*."* Daniel v. State of W.Va., 964 F. Supp. 1050, 1065 (S.D. W.Va. 1997)(*citing* Cooper v. North Carolina, 702 F.2d 481, 483 (4th Cir. 1983)).

Here, Petitioner merely asserts that there was no basis for the trial court's "series of statements" instruction . . . because . . . [his] interrogation by the police was continuous, in one room, and by the same to interrogators . . . that is, I gave . . . one statement only." ECF No. 54 at 11. Petitioner does not allege, much less establish, that the failure to give the instruction rendered his trial fundamentally unfair. It is apparent from the record that, consistent with the Court's instruction that it was for the jury to decide, the jury made the factual determination that there was no coercion, and voted to convict Petitioner on both counts.

Moreover, this Court affords great deference to the state trial court and the Supreme Court of Appeals of West Virginia, which found the challenged instruction to be permissible. Therefore, the

Court finds that the jury instructions given were not contrary to, or an unreasonable application of, clearly established federal law, and thus, no relief can be granted.

**IV.   Recommendation**

For the reasons previously set forth, it is hereby recommended that the amended petition [ECF No. 54] be **DENIED and DISMISSED with prejudice** from the active docket of this Court.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of any objections should also be submitted to the United States District Judge.   **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.**   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);   United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.   The Clerk is further directed to provide a copy of this Report and Recommendation electronically to Laura J. Young, Office of the Attorney General, 812 Quarrier Street, 6th Floor, Charleston, WV 25305.

DATED: December 27, 2016

/s/  James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE