IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TIMOTHY O'DELL,

                    Petitioner,

v.                              //    CIVIL ACTION NO. 1:14CV73
                                      (Judge Keeley)

MARVIN PLUMLEY,

                    Respondent.

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]

Now pending is the amended petition for habeas corpus pursuant to 28 U.S.C. § 2254 ("Amended Petition") filed by the petitioner, Timothy O'Dell ("O'Dell") (Dkt. No. 54). In 2006, O'Dell was convicted of first-degree murder in the Circuit Court of Berkeley County, West Virginia ("Circuit Court"), after giving a statement to investigators in which he confessed his involvement. He now contends that jury instructions regarding the voluntariness of his confession violated his Fifth and Fourteenth Amendment rights. Because no clearly established federal law requires West Virginia to submit this question to the jury, the Court concludes that O'Dell is not entitled to relief. It thus **DENIES** and **DISMISSES WITH PREJUDICE** the Amended Petition.

### I. BACKGROUND

A.   **Criminal Trial and Direct Appeal**

On August 24, 2005, while conducting a welfare check, members of the Berkeley County Sheriff's Department found Debbie Bivens

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

("Bivens") shot dead on her bedroom floor.[1] Although Bivens's home was locked, the bedroom window had been broken from the outside. Next to Bivens's body, Deputy Cpl. Brendan Hall located a .380 caliber handgun and a .40 caliber shell casing. Officers immediately identified Benny Brookman ("Brookman"), Bivens's former paramour, as a prime suspect.

The next day, Ramsey Turner ("Turner"), an acquaintance of O'Dell, read about Bivens's death in the local newspaper and decided to contact the Sheriff's Department. After confirming that Bivens had been shot with a .40 caliber handgun, Turner informed investigators that O'Dell had shown him such a weapon loaded with hollow point bullets several days before Bivens's death. According to Turner, O'Dell had shown him the gun after Turner declined his offer to make $10,000 by picking him up at a particular location on Route 51 and taking him home at 3:15 a.m. that Monday morning.

The information that Turner provided made O'Dell a prime suspect, and Deputy K.C. Bohrer went to his place of employment that same day. O'Dell arrived at work almost simultaneously, and Deputy Bohrer initiated a traffic stop. After removing both

---

[1] The Court's recitation of the underlying facts is taken from the Circuit Court's Final Order denying O'Dell's first state habeas petition (Dkt. No. 58-11), as well as O'Dell's brief on direct appeal (Dkt. No. 58-3).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

occupants from the vehicle, Deputy Bohrer handcuffed and searched O'Dell before releasing him and advising him of his rights. O'Dell then voluntarily agreed to accompany deputies to the station for an interview. Upon arrival, O'Dell executed a written waiver of his <u>Miranda</u> rights and proceeded to make a videotaped statement implicating himself as an accomplice in Bivens's murder.[2] More particularly, O'Dell admitted that Brookman hired him to drive an unknown person to Bivens's house and break out her bedroom window. He adamantly denied actually shooting Bivens, blaming the murder on the unknown individual. Following the interview, investigators arrested O'Dell for first-degree murder.

On August 31, 2005, police found Brookman's decomposing body shot and hanging from a tree stand in Maryland. Nearby, police found his locked truck, which contained a handwritten suicide note, including the following:

> yea I was Going to pay Timmy Odell to kill Debbie for 50.000 Gave him $8.000 still owed him $42.000 he called me wed August 24, 2005 said Job was Done . . . Timmy Odell aslo vandalized Her cars 2 years ago for $2000

On February 21, 2006, a grand jury in Berkeley County, West Virginia, indicted O'Dell for first-degree murder and conspiracy to

---

[2] The record includes a full transcript of this approximately two-hour videotape (Dkt. No. 58-30).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

commit murder. The Circuit Court held several pretrial hearings to address the admissibility of O'Dell's statement and Brookman's suicide note, both of which it ultimately found admissible.

At a hearing before the Circuit Court on September 15, 2006, O'Dell's counsel challenged the "emotional or psychological" pressures of O'Dell's interview, even though he conceded, "I don't think that my client's will was ever overborn[e]" (Dkt. No. 58-25 at 7-8). After eliciting testimony from Deputy Bohrer, defense counsel stated, "Judge, I don't have a leg to stand on after that testimony. No one is going to find more important--no appellate court is going to find, I don't believe, this wasn't a voluntary statement." Id. at 22. He further acknowledged that the investigators had done nothing to "overcome [O'Dell's] earnest resistence" or to promise leniency, but he nonetheless asked the Circuit Court to review some portions of the interview transcript. Id. at 23. After a recess during which it reviewed the transcript, the Circuit Court concluded, "I don't see where there's any action on behalf of the State which is such that would overcome someone's earnest resistance so as not to give a statement or pulls someone to give a statement against their will." It thus ruled that O'Dell's statement was voluntary and admitted it. Id. at 38.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

The case proceeded to trial on September 26, 2006. When the Circuit Court charged the jury at the start of the third day, September 28, 2006, it included the following instruction:

> The Court instructs the jury that under the law of this state the confession or statement against interest offered in evidence by the State may be considered by the jury in determining the guilt or innocence of the defendant of the crime charged in this case only if the jury believes that the State has proved by a preponderance of the evidence that such statement was freely and voluntarily made without threat, coercion, promise or reward, and that if you do not believe that the State has met this burden of proof, it is your duty to disregard such statement entirely.

(Dkt. No. 58-29 at 12-13).

During deliberations, this topic prompted several questions from the jury. The jury first asked, "when the defendant signed an agreement to the free and voluntary statement prior to the actual interrogation, at what point does the coercion invalidate the statement?" Id. at 77. The Circuit Court answered this question as follows:

> Please be seated. Ladies and gentlemen of the jury, I've received your question and I think the best way I can answer that is to say that any portions of the statement that you find were not freely and voluntarily made without threat, coercion, promise or reward may not be considered by you. Remember that it's the burden of the State to prove by a preponderance of the evidence which is a lesser standard than reasonable doubt, it's more likely than not, has to be proved. State bears the burden of proving to you that the statement or any portions thereof were made freely and voluntarily without threat,

5

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

coercion, promise or reward and that burden is by a
preponderance of the evidence. So anything that you find
in that statement that you feel was not made freely and
voluntarily without threat, coercion, promise, or reward
you must not consider.

Clear it up any? Okay, if I get one head nodding yes,
that's good. You have to go back and discuss it all. It
seems as if the question is asking when or if and does it
knock out the whole statement or not and things like
that, and the statement should be taken as a series of
statements and any portion thereof that you find was not
the product of freely and voluntarily made without
threat, coercion, promise, or reward then you must not
consider that. Got it? I will send you all back.

Id. at 85.

In response to two additional jury questions concerning

analysis of O'Dell's statement, the Court explained as follows:

. . . Any portions of the statement that have not been
proved beyond a reasonable doubt to your satisfaction
were made freely and voluntarily you must disregard. Do
you understand what I'm doing? I kind of have to flip it
because the defendant does not have to prove that they
were made freely and voluntarily. . . . The State has to
prove by a preponderance of the evidence that the
statements were made freely and voluntarily. So any
portion that you do not find that were not proved to your
satisfaction by a preponderance of the evidence were made
freely and voluntarily[,] you must disregard. . . .
. . .

If you find any of those statements whether it relates
back or not, if you find that they were not freely and
voluntarily given then you must not consider it, or
conversely, since I have to make sure that there's no
burden on the defendant to prove that they were freely
and voluntarily or not freely and voluntarily given, the
burden is on the State to prove that they were freely and
voluntarily given, but any statement before or after as

it goes through of any issue is a factual determination
as to whether or not they were freely and voluntarily
given, and if you determine that any portion of that
statement was not freely and voluntarily given then you
must disregard it. And I understand your question, I
really can't answer it because it is a factual
determination that you have to make as to whether or not
a subsequent statement was freely and voluntarily given
or not.

Id. at 88-95.

Later on September 28, 2006, the jury returned its verdict,
finding O'Dell guilty of both first-degree murder and conspiracy to
commit murder, but recommending mercy. On November 8, 2006, the
Circuit Court denied O'Dell's post-trial motions and sentenced him
to consecutive terms of imprisonment for life - with parole
eligibility after 15 years - and 1 to 5 years.

Thereafter, on September 17, 2008, the Circuit Court re-
sentenced O'Dell so that he could file a petition for appeal (Dkt.
No. 58-1). On appeal, O'Dell argued: 1) the Circuit Court had erred
by refusing to suppress his statement and instructing the jury that
they could consider some portions of his statement even if they
found others to be involuntary; 2) the Circuit Court had erred by
admitting Brookman's suicide note; 3) the state had failed to
disclose the results of testing on gunshot residue samples; and 4)
the evidence was insufficient to support a conviction (Dkt. No. 58-
3 at 38-39). On October 28, 2009, the Supreme Court of Appeals of

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

West Virginia ("Supreme Court of Appeals") summarily refused
O'Dell's petition for appeal (Dkt. No. 58-5).

## B.    Post-Conviction Proceedings

### 1.    State Habeas Corpus[3]

After the Supreme Court of Appeals refused his petition for
appeal, O'Dell filed a pro se petition for habeas corpus on March
3, 2010 (Dkt. No. 58-6). The Circuit Court appointed counsel, who
filed an amended petition on O'Dell's behalf, claiming that 1) the
admission of Brookman's suicide note had deprived O'Dell of due
process; 2) the Circuit Court had erred by admitting O'Dell's
statement after reviewing portions of a transcript rather than the
actual videotape; 3) trial counsel had provided ineffective
assistance; and 4) the weight of the errors warranted a new trial
(Dkt. No. 58-7). Habeas counsel also attached and incorporated a
lengthy amended petition penned by O'Dell, and asked that the
Circuit Court also address the issues raised by O'Dell. Id. at 25.[4]

_____

[3] The R&R contains a detailed recitation of these proceedings,
including the grounds raised in each petition, amended petition,
and appeal (Dkt. No. 66 at 5-11).

[4] Although the attached pro se amended petition is not a part
of the record, Magistrate Judge Seibert obtained a copy and
confirmed that O'Dell raised the following claim: "The trial court
violated the petitioner's 4th & 14th Amendment rights of the U.S.
Constitution and Article III, § 5 of the West Virginia Constitution
by committing plain and prejudicial error when it instructed the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

The Circuit Court declined to hold an evidentiary hearing on O'Dell's first habeas petition, denying relief in a thorough 30-page written order entered on January 30, 2013 (Dkt. No. 58-11). The Circuit Court reasoned that O'Dell's videotaped statement was admissible, and that, despite pointed jury questions concerning coercion, "[t]here [was] nothing in the record reflecting that the jury actually found that any part of the Petitioner's statement was involuntary. If they did they gave the statement such weight as they found it deserved and found the Petitioner guilty beyond a reasonable doubt." Id. at 23.

On appeal, the Supreme Court of Appeals denied relief by memorandum opinion dated November 22, 2013 (Dkt. No. 58-13). It reasoned that "[t]he record on appeal [was] entirely devoid of any indication that petitioner's interrogation was improper," and that he had "offered no support for the ground that his statement was coerced." Regarding O'Dell's argument that the Circuit Court had improperly instructed the jury, the Supreme Court of Appeals observed that the record lacked a basis for the jury's questions on

---

jury that they could consider portions of the petitioner's statement to be valid at the same time finding portions of it invalid due to police coercion instead of instructing the jury to disregard the entire statement if they found any of it to be the product of police coercion" (Dkt. No. 66 at 5-6).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

coercion. It was also satisfied by the Circuit Court's "standard instruction regarding the State's obligation to prove by a preponderance of the evidence that petitioner's statement was voluntarily made," which "utilized the phrase, 'without threat, coercion, promise or reward.'" Id. at 7.

On March 27, 2014, O'Dell filed a second habeas petition in the Circuit Court, alleging ineffective assistance of habeas counsel (Dkt. No. 58-14). The Circuit Court appointed counsel, who filed an amended petition arguing that O'Dell's first habeas counsel had failed to prepare an adequate appendix, failed to present proper arguments of law, and refused to include important constitutional arguments (Dkt. No. 58-15 at 6-7). The Circuit Court dismissed the petition, concluding that habeas counsel had adequately represented O'Dell, and that, in any event, he had not been prejudiced by counsel's actions (Dkt. No. 58-18 at 10), a decision the Supreme Court of Appeals affirmed on June 3, 2016 (Dkt. No. 58-22).

**2.  § 2254 Petition**

On April 21, 2014, while his second habeas corpus proceeding was still pending in state court, O'Dell filed a § 2254 petition and a motion for stay and abeyance in this Court (Dkt. No. 1). In

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

his original petition, O'Dell had argued that 1) his Sixth
Amendment right to confront witnesses had been violated by the
admission of police testimony on medical findings, as well as
Brookman's suicide note, and 2) his Fifth and Fourteenth Amendment
rights had been violated by the admission of his statement to
investigators, as well as the Circuit Court's answers to relevant
jury questions during deliberations. Id. at 6-13. On February 5,
2015, the Court denied and dismissed the petition as untimely based
primarily on its conclusion that the time limitations of the Anti-
Terrorism and Effective Death Penalty Act had not begun anew when
the Circuit Court re-sentenced O'Dell in 2008 (Dkt. No. 22).

The Fourth Circuit granted O'Dell a certificate of
appealability on the issue of timeliness and appointed counsel.
During briefing, the respondent conceded that O'Dell had timely
filed his petition; the Fourth Circuit therefore granted O'Dell's
unopposed motion for summary disposition, reversed the Court's
judgment, and remanded the case for further proceedings (Dkt. No.
37).

Thereafter, on May 3, 2016, the Court conducted a status
conference at which it stayed the case and directed O'Dell to
advise when the Supreme Court of Appeals issued its decision on his
second state habeas petition (Dkt. No. 43). On June 6, 2016, O'Dell

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

advised that the Supreme Court of Appeals had issued its decision
denying relief; on September 12, 2016, he further advised that the
Supreme Court of Appeals had denied his petition for rehearing
(Dkt. Nos. 46; 50).[5] On September 28, 2016, the Court lifted the
stay and recommitted the case to the Honorable James E. Seibert,
United States Magistrate Judge (Dkt. No. 52).

O'Dell filed his Amended Petition on October 7, 2016, in which
he claims only that "the trial court's 'series of statements' jury
instruction allowed the jury to consider portions of petitioner's
statement that were subsequent to a coerced portion, even though
there were no intervening events that broke the 'causal connection'
between the portions, in violation of the United States
Constitution" (Dkt. No. 54 at 5). Critically, according to O'Dell,
the jury's references in the questions to "the coercion," "the
perceived coercion," and "original coercion" indicate that the jury
found he had been coerced during the interrogation. Id. at 11.

---

[5] O'Dell also notified the Court that he intended to file an
original jurisdiction petition for habeas corpus in the Supreme
Court of Appeals (Dkt. No. 51). He filed that petition on September
20, 2016, raising the exact claim he has raised in the Amended
Petition before this Court (Dkt. No. 58-23). On April 23, 2017, the
Supreme Court of Appeals summarily refused to issue a writ of
habeas corpus (Dkt. No. 77).

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]

In a Report and Recommendation ("R&R") entered on December 27, 2016, Magistrate Judge Seibert recommended that the Court deny and dismiss O'Dell's amended petition (Dkt. No. 66). After finding that O'Dell had successfully exhausted his sole claim in state court,[6] Magistrate Judge Seibert further reasoned that O'Dell had failed to establish that the Circuit Court's instructions "rendered his trial fundamentally unfair." Id. at 29. O'Dell filed timely objections to the R&R's reasoning and conclusion (Dkt. No. 71-1).

## II. STANDARD OF REVIEW

When reviewing a magistrate judge's R&R made pursuant to 28 U.S.C. § 636, the Court must review de novo only the portions of the R&R to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without

---

[6] Both parties and the magistrate judge agree that O'Dell successfully exhausted his claim in state court. O'Dell believes that he exhausted the claim on direct appeal (Dkt. No. 54 at 12), while the respondent and magistrate judge believe he did so in his first habeas proceeding (Dkt. Nos. 60 at 2-9; 66 at 22). O'Dell objected at length to the R&R's conclusion that he did not exhaust the claim on direct appeal (Dkt. No. 71-1 at 3). He did not object, however, to the R&R's alternate reasoning that the claim was exhausted in O'Dell's first habeas proceeding. The Court's review of the R&R has uncovered no clear error in the magistrate judge's reasoning in this regard. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). While O'Dell may prefer that he be correct as to the manner of exhaustion, it simply has no effect on the magistrate judge's recommendation. Therefore, the Court need not reach O'Dell's objection.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

explanation, any of the magistrate judge's recommendations to which
the prisoner does not object." <u>Dellacirprete v. Gutierrez</u>, 479 F.
Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing <u>Camby v. Davis</u>, 718
F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions
of a recommendation to which no objection has been made unless they
are "clearly erroneous." <u>See</u> <u>Diamond v. Colonial Life & Accident
Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).

### III. APPLICABLE LAW

Title 28 U.S.C. § 2254 permits a state prisoner to file an
application for a writ of habeas corpus to challenge his conviction
"only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States." 28 U.S.C.
§ 2254(a). Issuance of the writ is "certainly" appropriate where
the court finds "errors that undermine confidence in the
fundamental fairness of the state adjudication." <u>Williams v.
Taylor</u>, 529 U.S. 362, 375 (2000).

A court may not grant a writ under § 2254 regarding a claim
"adjudicated on the merits in State court" unless the adjudication:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

A "state-court decision is contrary to" the Supreme Court's "precedent if the state court arrives at a conclusion opposite to that reached" by the Supreme Court "on a matter of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Williams, 529 U.S. at 405. A state court decision "involves an unreasonable application" of such law if it "identifies the correct governing legal principle . . . but unreasonably applies" it to the facts at issue. Id. at 412. Importantly, "unreasonable application" requires that the Court do more than "conclude[] in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Therefore, § 2254 acts to guard only against "extreme malfunctions," such as "cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington v. Richter, 562 U.S. 86, 102 (2011).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

Indeed, "principles of comity and respect for state court judgment precludes federal courts from granting habeas relief to state prisoners for constitutional errors committed in state court absent a showing that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" <u>Richmond v. Polk</u>, 375 F.3d 309, 335 (4th Cir. 2004) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)). As the Supreme Court has explained in the context of jury instructions:

> The only question . . . is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . . , we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. And we also bear in mind our previous admonition that we have defined the category of infractions that violate fundamental fairness very narrowly. Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.

<u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (internal citation and quotation omitted). Moreover, factual determinations by the state court are presumed correct, unless the petitioner can prove otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Sharpe v. Bell</u>, 593 F.3d 372, 379 (4th Cir. 2010).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

## IV. DISCUSSION

In his R&R, Magistrate Judge Seibert reasoned that O'Dell had failed to allege or establish that the Circuit Court's jury instructions rendered his trial fundamentally unfair, and thus recommended that the Court deny his Amended Petition (Dkt. No. 66 at 29-30). In his objections, O'Dell continues to argue that the Circuit Court's "series of statements" instruction was erroneous. He posits that the jury's questions indicate it found he had been coerced during the interview, and that the Circuit Court's instruction prompted the jury to impermissibly rely on portions of his statement "subsequent to a coerced portion." According to O'Dell, it is thus reasonably likely that the jury applied the instruction in a manner that violated the Constitution (Dkt. No. 71-1 at 11-18). Upon careful review, the Court agrees with Magistrate Judge Seibert that the Circuit Court's jury instructions could not have violated clearly established federal law or rendered O'Dell's trial fundamentally unfair.

There is a critical distinction between the Circuit Court's constitutional duty to exclude involuntary statements and its state-law duty to instruct the jury on voluntariness. On a fundamental level, the Fifth Amendment precludes the admission of involuntary statements or confessions wrongfully elicited by state

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]

actors. The voluntariness of a confession is not a state-court factual finding entitled to the presumption of correctness.[7] <u>Miller v. Fenton</u>, 474 U.S. 104, 110 (1985) ("Without exception, the Court's confession cases hold that the ultimate issue of 'voluntariness' is a legal question requiring independent federal determination."). Rather, when a confession's voluntariness is at issue in a § 2254 proceeding, "federal habeas courts must independently apply federal law to ultimately determine whether the state court's voluntariness determination was contrary to, or an unreasonable application of, that law." <u>Moss v. Ballard</u>, 537 F. App'x 191, 196 (4th Cir. 2013) (unpublished decision).

As the Fourth Circuit has explained:

> To determine whether a statement or confession was obtained involuntarily, in violation of the Fifth Amendment, "[t]he proper inquiry 'is whether the defendant's will has been overborne or his capacity for self-determination critically impaired.'" To make this determination, we consider "the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation."

> We have consistently declined to hold categorically that a suspect's statements are involuntary simply because police deceptively highlight the positive aspects of

---

[7] The Court notes that O'Dell objected to the R&R's reasoning that his "challenge to the 'series of statements' jury instructions is merely a challenge to the factual determination by the jury that his statement was voluntary" (Dkt. No. 71-1 at 9).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

confession. . . . "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary." Rather, we must look at the totality of the circumstances to see if [the defendant] was not acting of his own volition.

United States v. Umana, 750 F.3d 320, 344-45 (4th Cir. 2014) (internal citations omitted); see also Hayes v. Plumley, No. 2:15-CV-15636, 2016 WL 5662037, at *5 (S.D.W. Va. Sept. 30, 2016); Bailey v. United States, 1:14CV904, 2016 WL 6271453, at *6 (M.D.N.C. Sept. 22, 2016). Moreover, "[a]n officer's truthful statement . . . [is] not an unduly coercive threat." United States v. Taylor, No. 16-4773, 2017 WL 2261531 (4th Cir. May 23, 2017) (unpublished decision) (citing United States v. Braxton, 112 F.3d 777, 782 (4th Cir. 1997)).

O'Dell expressly disclaims any argument that his statement actually was coerced, instead directing his challenge at the Circuit Court's jury instructions on voluntariness (Dkt. Nos. 63 at 4; 71-1 at 10). The Supreme Court of Appeals has adopted the "humane" or "Massachusetts" rule permitting "juries to consider voluntariness of confessions." State v. Taylor, 285 S.E.2d 635, 636 (W. Va. 1981). "In all trials . . . where a confession or admission is objected to by the defendant at trial or prior to trial on the grounds of voluntariness, the trial court must instruct the jury on

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

this issue if requested by the defendant." Syl. Pt. 5, <u>State v.
Vance</u>, 250 S.E.2d 146 (W. Va. 1978).

When it adopted this rule, West Virginia acknowledged that
"there is no Sixth Amendment right to have a jury redetermine the
voluntariness issue once the trial judge has decided the matter."
<u>Id.</u> at 151 (citing <u>Lego v. Twomey</u>, 404 U.S. 477, 490-91 (1972));
<u>Taylor</u>, 285 S.E.2d at 382 ("This rule is not constitutionally
required."). Nonetheless, it adopted the rule in an effort to
reinforce "the general concepts of the right to jury trial," and to
recognize that preliminary judicial decisions are not infallible.
<u>Vance</u>, 250 S.E.2d at 150. Failure to give the instruction upon a
defendant's request is reversible error. <u>State v. Wilson</u>, 439
S.E.2d 448, 454 (W. Va. 1993).

Here, after hearing testimony from Deputy Bohrer and reviewing
portions of the interview transcript identified by counsel, the
Circuit Court made a pretrial finding that O'Dell's statement was
voluntary and would be admissible at trial (Dkt. No. 58-25 at 38).
The Supreme Court of Appeals summarily refused to grant a petition
for appeal on this ground (Dkt. No. 58-5). Moreover, when it
affirmed the Circuit Court's denial of O'Dell's first habeas
petition, the Supreme Court of Appeals found that "[t]he record on

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]

appeal [was] entirely devoid of any indication that petitioner's interrogation was improper" (Dkt. No. 58-13 at 7).[8]

Nonetheless, when charging the jury as required by the "humane" West Virginia rule, the Circuit Court instructed it to consider O'Dell's statement only if the state had proven "by a preponderance of the evidence that such statement was freely and voluntarily made" (Dkt. No. 58-29 at 12). In response to repeated jury questions concerning this instruction, the Circuit Court reiterated that it was incumbent upon the jury to determine whether the state had met its burden regarding the entire interview or discrete portions, as the jury saw fit. Id. at 85-95. As discussed, the Supreme Court of Appeals was satisfied with this instruction (Dkt. No. 58-13 at 7).

By arguing that the Circuit Court failed to instruct the jury in accordance with clearly established federal law, O'Dell has erroneously conflated the applicable standards. Of course, the Circuit Court was constitutionally obligated to exclude O'Dell's statement if the totality of the circumstances established that it

---

[8] In his second habeas petition, O'Dell argued that his first habeas counsel was ineffective for failing to include relevant portions of the record on appeal (Dkt. No. 58-15 at 6). The Circuit Court found that O'Dell had not been prejudiced by counsel's actions, and the Supreme Court of Appeals affirmed (Dkt. Nos. 58-18; 58-22).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

was involuntary. See Umana, 750 F.3d at 344. Had O'Dell challenged
the Circuit Court's conclusion in this regard, this Court likewise
would be obligated to assess "whether the state court's
voluntariness determination was contrary to, or an unreasonable
application of" clearly established federal law. Moss, 537 F. App'x
at 196. But O'Dell has not done so, rather asserting that the sole
issue before the Court is "whether the jury was properly instructed
on the law of coerced statements," to the exclusion of "[w]hether
[his] statement was coerced" (Dkt. No. 63 at 4).

Neither the Constitution nor clearly established federal law
required the Circuit Court to submit the question of voluntariness
to the jury. In fact, the Supreme Court of the United States has
expressly declined to impose such a requirement. Lego, 404 U.S. at
489-90. It is the Circuit Court – not the jury – that must "pass
upon the admissibility of evidence when constitutional grounds are
asserted for excluding it." See id. at 490. Unlike the Circuit
Court's mandatory determination, West Virginia's self-imposed
voluntariness instruction is prudential in nature and not regulated
by the strictures of the Supreme Court's Fifth Amendment
jurisprudence. See Jackson v. Denno, 378 U.S. 368, 378 n.8 (1964)
("Given the integrity of the preliminary proceedings before the

judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant.").

Therefore, even assuming that the Circuit Court's challenged jury instructions were a wholly inaccurate statement of federal law, they are in no way governed by such law, and "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72. Given the Circuit Court's unchallenged determination that the entire statement at issue was voluntary and admissible, the jury was permitted to consider the entire statement, and there thus can be no reasonable likelihood it applied the instructions in violation of the Constitution. See id. at 72. The sole claim of O'Dell's amended petition, a challenge to the content of precautionary jury instructions not required by the Constitution or clearly established federal law, accordingly is without merit.

## V. CONCLUSION

For the reasons discussed, the claim presented in O'Dell's amended petition is without merit. Therefore, the Court:

1) **ADOPTS** the R&R (Dkt. No. 66);

2) **GRANTS** the respondent's motion for summary judgment (Dkt. No. 58);

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING
AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

3) **GRANTS** O'Dell's motion for leave to file a 19-page objection (Dkt. No. 71);

4) **GRANTS** O'Dell's motion for leave to file a 4-page reply to the respondent's response to his objections (Dkt. No. 73);

5) **OVERRULES** O'Dell's objections (Dkt. No. 71-1); and

6) **DENIES** and **DISMISSES WITH PREJUDICE** O'Dell's Amended Petition (Dkt. No. 54).

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record and the <u>pro se</u> petitioner, certified mail and return receipt requested, and to enter a separate judgment order. DATED: July 11, 2017.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 66] AND DENYING AND DISMISSING AMENDED PETITION WITH PREJUDICE [DKT. NO. 54]**

certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2254(a).

The Court finds that it is inappropriate to issue a certificate of appealability in this matter because O'Dell has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003). Upon review of the record, the Court finds that O'Dell has not made the requisite showing, and **DENIES** a certificate of appealability.[9]

---

[9] As O'Dell points out in his objections (Dkt. No. 71-1 at 1-2), the Court acknowledges that, when the Fourth Circuit granted O'Dell a certificate of appealability regarding the timeliness of his § 2254 petition, it found that he had "made a substantial showing of the denial of his Fifth and Fourteenth Amendment rights against self-incrimination." At that time, the appeals court had neither the benefit of the entire record, nor the limited argument that O'Dell now presents in his Amended Petition.